[Cite as *Jarvis v. First Resolution Mgt. Corp.*, 2012-Ohio-5653.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| SANDRA J. TAYLOR JARVIS | | C.A. No. 26042 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| FIRST RESOLUTION INVESTMENT CORP., et al. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO CASE No. CV 2010 03 1627 |
| Appellees | | |

DECISION AND JOURNAL ENTRY

Dated: December 5, 2012

---

CARR, Judge.

{¶1} Appellant Sandra Jarvis appeals the judgment of the Summit County Court of Common Pleas. This Court reverses and remands.

I.

{¶2} First Resolution Investment Corporation filed a complaint against Ms. Jarvis in an attempt to collect the charged off sum plus interest accrued to date on credit card debt, the interest in which it purchased from Chase Bank. Investment Corp. also sought future interest at a rate of 24 percent. After Ms. Jarvis failed to file a timely answer, Investment Corp. moved for default judgment. The trial court granted default judgment to Investment Corp. in the amount of $16,832.88, plus 24 percent future interest. Six weeks later, Ms. Jarvis moved to vacate the default judgment. The parties and judge signed a stipulated entry granting the motion to vacate.

{¶3} Ms. Jarvis filed an answer in which she raised several affirmative defenses, including the defense that Investment Corp.'s claim for money due was barred by the applicable

statute of limitations. She also filed counterclaims premised on the Fair Debt Collection Practices Act, the Ohio Consumer Sales Practices Act, and common law abuse of process. She alleged these claims on her own behalf and as class action claims. Ms. Jarvis later filed a "first amended class action counterclaim," in which she alleged claims against Investment Corp., First Resolution Management Corporation, Attorney Parri Hockenberry, and Cheek Law Offices, LLC. She alleged three class action claims under the Fair Debt Collection Practices Act, to wit: a claim against Investment Corp., Management Corp., and Cheek Law arising out of letters threatening legal action to collect a debt when such legal action was barred by the applicable statute of limitations; a claim against Investment Corp., Attorney Hockenberry, and Cheek Law arising out of the filing of a complaint to collect money due when such legal action was barred by the applicable statute of limitations; and a claim against Investment Corp., Attorney Hockenberry, and Cheek Law arising out of the filing of a complaint seeking post-judgment interest in excess of the statutory rate in the unjustified absence of a written contract supporting such a claim. Ms. Jarvis alleged a class action claim against all four parties under the Ohio Consumer Sales Practices Act arising out of the same circumstances alleged above. Finally, she alleged a class action common law abuse of process claim against Investment Corp., Attorney Hockenberry, and Cheek Law. Ms. Jarvis further moved for class certification.

{¶4} Investment Corp. dismissed without prejudice its complaint against Ms. Jarvis pursuant to Civ.R. 41(A)(1)(a). The four counterclaim defendants subsequently moved to realign the parties to designate Ms. Jarvis as the plaintiff, as hers were the only claims pending. The trial court granted the motion over Ms. Jarvis' objection.

{¶5} All parties filed motions for summary judgment. The trial court held the motion for class certification in abeyance pending its resolution of the motions for summary judgment.

The trial court ultimately granted summary judgment in favor of Investment Corp., Management Corp., Ms. Hockenberry, and Cheek Law on all of Ms. Jarvis' claims. Ms. Jarvis appealed and raises two interrelated assignments of error, which we consolidate to facilitate review.

II.

**ASSIGNMENTS OF ERROR**

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES. THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO APPELLANT.

{¶6} Ms. Jarvis argues that the trial court erred by granting summary judgment in favor of Investment Corp., Management Corp., Ms. Hockenberry, and Cheek Law on her claims and by denying summary judgment in her favor. This Court agrees in part.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶8} Pursuant to Civ.R. 56(C), summary judgment is proper if:

No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶9} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of

supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶10} The non-moving party's reciprocal burden does not arise until after the moving party has met its initial evidentiary burden. To do so, the moving party must set forth evidence of the limited types enumerated in Civ.R. 56(C), specifically, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" Civ.R. 56(C) further provides that "[n]o evidence or stipulation may be considered except as stated in this rule."

{¶11} Under the Fair Debt Collection Practices Act ("FDCPA"), a debt collector is prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. 1692e. This includes any false representation of the character, amount, or legal status of a debt; any threat to take action that cannot be taken legally; and the use of any false representation or deceptive means to collect or attempt to collect a debt. 15 U.S.C. 1692e(2)(A), (5), and (10). Moreover, a debt collector is prohibited from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. 1692f. This includes the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f(1). A "debt collector" includes "any person who uses any instrumentality of interstate commerce or the mails in any

business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). Within this context, a "consumer" is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. 1692a(3).

{¶12} Under the Ohio Consumer Sales Practices Act ("OCSPA"), "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(A). Moreover, "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.03(A). A "consumer transaction" is any "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). A "supplier" is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." R.C. 1345.01(C). In this context, a "consumer" is a "person who engages in a consumer transaction with a supplier." R.C. 1345.01(D). The Ohio Consumer Sales Practices Act has been held to apply to debt collectors and to litigation activities. *Hartman v. Asset Acceptance Corp.*, 467 F.Supp.2d 769, 780 (S.D.Ohio 2004).

{¶13} The interrelationship between the FDCPA and OCSPA is well established. "'[V]arious violations of the FDCPA constitute a violation of the CSPA…[T]he purpose of both acts is to prohibit both unfair and deceptive acts and this court holds that any violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. 1345.02 and/or 1345.03.'" *Kelly v. Montgomery Lynch & Associates, Inc.*,

N.D.Ohio No. 1:07-CV-919, 2008 WL 1775251, *11 (Apr. 15, 2008), quoting *Becker v. Montgomery, Lynch*, N.D.Ohio No. 1:02CV874, 2003 WL 23335929, *2 (Feb. 26, 2003).

{¶14} To prevail on a claim for abuse of process, Ms. Jarvis must establish "(1) that a legal proceeding was properly initiated and supported by probable cause, (2) that same legal proceeding was perverted by the nonmoving party in order to achieve 'an ulterior motive for which it was not designed,' and (3) that the moving party has incurred damages as a result of the nonmoving party's wrongful use of process." *Gugliotta v. Morano*, 161 Ohio App.3d 152, 2005-Ohio-2570, ¶ 47 (9th Dist.), quoting *Levey & Co. v. Oravecz*, 9th Dist. No. 21768, 2004-Ohio-3418, ¶ 8, citing *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298 (1994).

{¶15} The trial court granted summary judgment in favor of all four defendants on Ms. Jarvis' FDCPA and OCSPA claims arising out of their representation of the legal status of the credit card debt during their attempts to collect it. The trial court did so based on its finding that R.C. 2305.03(B), Ohio's borrowing statute, was not applicable in this case, so the applicable statute of limitations was either the 15-year or 6-year period under Ohio law. The borrowing statute provides in relevant part: "No civil action that is based upon a cause of action that accrued in any other state, territory, district, or foreign jurisdiction may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state, territory, district, or foreign jurisdiction has expired or the period of limitation that applies to that action under the laws of this state has expired." R.C. 2305.03(B). Specifically, the trial court found that the cause of action (to collect on the credit card debt) accrued in Ohio, precluding application of the borrowing statute. Moreover, it found that the cause accrued prior

to the April 7, 2005 effective date of the borrowing statute, thereby precluding retroactive application of the statute.

{¶16} The trial court also granted summary judgment in favor of Investment Corp., Ms. Hockenberry, and Cheek Law on Ms. Jarvis' abuse of process claim. It did so in part after concluding that Investment Corp.'s claim against Ms. Jarvis to collect credit card debt was initiated with probable cause which could only have existed if the claim was not time-barred.

Applicability of Ohio's borrowing statute

{¶17} The determination as to whether R.C. 2305.03(B) applied to this matter was of paramount importance because the statute of limitations (at the time relevant to this matter) to bring an action to collect such a debt was (1) in Ohio, 15 years where the contract was in writing, former R.C. 2305.05; (2) in Ohio, 6 years where the contract was not in writing, R.C. 2305.07; and (3) in Delaware, 3 years, 10 Del.C. 8106(a). There is no dispute that Investment Corp. filed its complaint against Ms. Jarvis on March 9, 2010. Accordingly, if the Delaware statute of limitations was applicable, the cause of action to collect on the debt must have accrued no earlier than March 9, 2007, lest Investment Corp.'s claim be time-barred. Most of Ms. Jarvis' claims under the FDCPA and OCSPA, as well as her abuse of process claim, were premised on the allegation that Investment Corp.'s claim was time-barred when Management Corp. and Cheek Law sent a letter in an attempt to collect on the debt and when Investment Corp. through Ms. Hockenberry and Cheek Law filed the complaint.

Where the claim accrued

{¶18} Ohio's borrowing statute does not clarify how to determine where a cause of action accrues, and case law has not offered a definitive answer. While we disagree with the Sixth Circuit's ultimate determination regarding the place where certain breaches of contract

have accrued for purposes of Kentucky's borrowing statute, we agree with the circuit court's sentiment that "[t]he elements of time and place of accrual are inextricably intertwined: The time when a cause of action arises and the place where it arises are necessarily connected, since the same act is the critical event in each instance." (Internal quotations omitted.) *Swanson v. Wilson*, 423 Fed.Appx. 587, 593 (2011). We may disagree regarding the interpretation of the "act" that implicates the breach, but we agree that the time and place of the breach are interdependent.

{¶19} The trial court found that the claim accrued in Ohio because that was where Ms. Jarvis resided, primarily used her credit card, and decided to stop making the minimum required payments. While admitting that it could not find any controlling authority directly on point, the trial court was persuaded by the reasoning of the United States District Court for the Eastern District of Kentucky, which held that for a breach of a contract for money due, "the cause of action accrues where the decision to deny payment was made." *Combs v. Internatl. Ins. Co.*, 163 F.Supp.2d 686, 692 (2001).

{¶20} *Combs* involved an insurance company's refusal to indemnify its insured and implicated Kentucky's borrowing statute. After consideration of the law in several other jurisdictions, the federal district court adopted the "final significant event" test after predicting that the Kentucky Supreme Court would find the reasoning of Wisconsin state and federal courts persuasive. *Id.* at 694. The *Combs* court reasoned that the insured's cause of action against the insurance company accrued where the insurance company "rejected the demands for payment," as evidenced by the mailing of a letter to the insured to that effect. *Id*.

{¶21} The Sixth Circuit Court of Appeals affirmed the district court's decision in a lengthy decision that considered the reasoning and law enunciated by the states of Wyoming,

New York, Missouri, Illinois, and Florida. *Combs v. Internatl. Ins. Co.*, 354 F.3d 568 (6th Cir.2004). After rejecting the "most significant relationship" test adopted by other states and enunciated in Section 188 of the Restatement of Law 2d, Conflict of Laws, and narrowing its focus to situations involving anticipatory repudiation, the circuit court held that "an anticipatory breach occurs where the breaching party posts its letter of renunciation[,]" rather than where the other party received the letter. *Id.* at 602. This Court rejects the reasoning of the *Combs* courts and their adoption and application of the "final significant event" test to determine where the cause of action accrued. Accordingly, the trial court's reliance on such reasoning was misplaced.

{¶22} The Ohio Supreme Court has thoughtfully considered the issue of the choice of law in regard to actions sounding in contract. This Court finds the reasoning and test adopted by the high court relevant to determining where a cause of action for breach occurred. The parties here agree that Ms. Jarvis' alleged failure to pay money due arose out of her alleged breach of a credit card agreement.

{¶23} Unlike the Sixth Circuit, which rejected the "most significant relationship" test enunciated in the Restatement of Law 2d, Conflict of Laws, the Ohio Supreme Court has long embraced that test. In *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436 (1983), the high court reiterated the general rule that the law of the state where the contract is to be performed governs on the theory that the place of performance bears the most significant relationship to the contract. *Id.* at 438. In considering whether to apply the law of the state chosen by the parties in their contract, the *Schulke* court held that the contractual choice of law provision would govern "*unless* either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the chosen state would be contrary to the fundamental policy of a state

having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties." (Emphasis added.) *Id.* at syllabus.

{¶24} A year later, the Ohio Supreme Court considered the question of the choice of law applicable to contract disputes where the parties had not provided for such in the contract. *Gries Sports Ents., Inc. v. Modell*, 15 Ohio St.3d 284 (1984). The high court formally adopted Section 188 of the Restatement of the Law 2d, Conflict of Laws, and held: "In the absence of an effective choice of law by the parties, the contacts to be taken into account to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Gries Sports* at syllabus.

{¶25} Since that time, the Ohio Supreme Court has applied the "most significant relationship" test in various types of contractual disputes to resolve choice of law issues. *See, e.g., Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 481 (2001) (referring to the Restatement's test as a needed "predictable methodology * * * to choose the applicable law if neither the parties nor the statutory scheme make that choice for them."). Moreover, the Sixth Circuit Court of Appeals has recognized Ohio's adoption and application of the "most significant relationship" test in these circumstances. *Natl. Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir.1992) ("Ohio choice of law rules mandate that the law of the state with the more significant relationship to the contract should govern disputes arising from it. To determine which state has the more significant relationship to the contract, Ohio law has adopted the test set forth in the Restatement (Second) of Conflict of Laws Section 188.") The test embraced by the

Ohio courts in determining choice of law issues in contract disputes guides our decision in determining where any breach of the contract occurred and, consequently, where the cause of action accrued.

{¶26} The trial court found that the cause of action accrued in Ohio because that is where Ms. Jarvis "resides, primarily used the credit card, and decided to stop making the minimum required payments[.]" The trial court further found that Ms. Jarvis "could have also chosen to make her payments on the Internet, by telephone, or to a Chase bank branch" rather than to the remittance address in Delaware. Ms. Jarvis did not dispute that she resided in Ohio at all times relevant to this matter. However, the defendants did not present any evidence to demonstrate where Ms. Jarvis primarily used her card, that she was in Ohio at the moment she decided not to pay amounts owed on her account, or that she could have made her payments in any way but by check to the payment address in Wilmington, Delaware.

{¶27} On the other hand, the evidence demonstrates that Ms. Jarvis sent her credit card invitation to Delaware and that her offer was accepted in Delaware, thereby creating a contract in Delaware. Ms. Jarvis' obligation was to be performed by making payments on her account. Her performance was not completed merely by depositing her check in the mail, but rather upon timely receipt of a valid check in Delaware.

{¶28} Moreover, the defendants did not present any affidavits or deposition testimony to show that they attempted to collect the credit card debt from Ms. Jarvis in the belief that their claim accrued in Ohio and was, therefore, not time-barred. Ms. Jarvis, on the other hand, attached a copy of Management Corp.'s procedures provided during discovery, which indicated that the company recognized that Chase Manhattan accounts are subject to Delaware's 36-month (3-year) statute of limitations in Ohio.

{¶29}   Viewing each party's evidence in a light most favorable to the non-moving party, this Court concludes as a matter of law that Investment Corp.'s cause of action for breach of the credit card agreement accrued in Delaware where the most significant relationship regarding the contract existed.

When the claim accrued

{¶30}   Even though Investment Corp.'s claim accrued in Delaware, R.C. 2305.03(B) would not be effective to require the application of the three-year Delaware statute of limitations if Investment Corp.'s claim accrued prior to the statute's April 7, 2005 effective date.  In the absence of express intent by the legislature that a statute that is not merely remedial be applied retroactively, the statute will only be applied prospectively.  *Smith v. Smith*, 109 Ohio St.3d 285, 2006-Ohio-2419, ¶ 6; *see also* Ohio Constitution, Article II, Section 28.

{¶31}   The trial court found that the claim accrued prior to April 7, 2005, thereby precluding the application of R.C. 2305.03(B).  Significantly, because the defendants failed to produce a copy of the credit card agreement governing Ms. Jarvis' account, there was no evidence of the parties' agreement to describe under which circumstances a default or breach would occur, whether Chase possessed remedies for default in the absence of legal action, and whether it must pursue such remedies prior to pursuing legal action.

{¶32}   The trial court appears to have premised its finding regarding when Investment Corp.'s claim accrued on events that occurred on three dates prior to the effective date of the statute.  First, the court twice noted that Ms. Jarvis last used her credit card in 2004.  This Court is at a loss as to why the last date of use of the card was relevant to determining when any claim accrued.  Second, the trial court found that Ms. Jarvis "first failed to make the minimum required monthly payment on January 1, 2005."  Although the trial court cited Ms. Jarvis' response to

request for admission number 8, Ms. Jarvis only admitted that she did not make the minimum payment due on January 1, 2005, not that that was the first time she failed to pay the minimum due. On the other hand, Ms. Jarvis presented copies of credit card statements that indicated that she carried a past due amount and was assessed a late fee on a statement covering the period of December 10, 2003, to January 9, 2004, almost a full year earlier. Ms. Jarvis remained delinquent on her account for another six months, made a payment that cured her deficiency, failed to make required minimum payments in September and October 2004, made appropriate payments in November and December 2004, and again failed to make her minimum payment in January 2005. If this Court accepted, which we do not, the legal proposition that the claim accrued when Ms. Jarvis "first" failed to pay the monthly minimum due, it is unclear how her "first" failure occurred on January 1, 2005. Finally, the trial court found that Ms. Jarvis' account "was marked delinquent on February 7, 2005." Certainly, Chase was the entity that would have marked the account delinquent at that time, as Chase did not sell its interest in the account until February 13, 2008. Investment Corp. did not purchase its interest in the debt until June 19, 2008. The trial court did not cite any authority for finding that a claim for the payment of credit card debt accrues when the account is marked delinquent, and this Court does not adopt any such proposition of law. Significantly, Ms. Jarvis attached Management Corp.'s admissions that Ms. Jarvis made her last payment on the account on June 28, 2006, and that Chase wrote off the debt on January 31, 2006. The trial court did not note either event, implicitly finding neither event relevant to the inquiry.

{¶33} The issue of when a claim accrues regarding credit card debt is unsettled, in part because courts have not consistently categorized credit card accounts. We reject Ms. Jarvis' argument that they are analogous to installment contracts. *See* R.C. 1317.01(A). This Court

concludes that credit card accounts are more properly categorized as open accounts. The legislature has broadly defined "account" to include "a right to payment of a monetary obligation, whether or not earned by performance, * * * (vii) arising out of the use of a credit or charge card or information contained on or for use with the card * * *." R.C. 1309.102(A)(2)(a).

{¶34} The Court of Appeals of Indiana has thoughtfully considered the nature of credit card accounts, distinguishing them from promissory notes and installment loans in which the total amount of indebtedness and a repayment schedule are fixed. *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1159 (Ind.App.2010), citing *Portfolio Acquisitions, LLC v. Feltman*, 909 N.E.2d 876 (Ill.App.2009). The *Smither* court concluded that credit card accounts closely resemble "open accounts" in that "the precise amount of indebtedness that a customer may incur is unknown and fluctuating and the account is kept open in anticipation of future transactions, unless one of the parties decides to close it." *Id.* at 1160. The common law definition of "open account" is instructive:

> An "open account" is an account with a balance which has not been ascertained and is kept open in anticipation of future transactions. An open account results where the parties intend that the individual transactions in the account be considered as a connected series, rather than as independent of each other, subject to a shifting balance as additional debits and credits are made, until one of the parties wishes to settle and close the account, and where there is but one single and indivisible liability arising from such series of related and reciprocal debits and credits. This single liability is fixed at the time of settlement, or following the last entry in the account, and such liability must be mutually agreed upon between the parties, or impliedly imposed upon them by law. *Thus, an open account is similar to a line of credit.*
>
> Observation: Openness of an account, for purposes of an action on an open account, is indicated when further dealings between the parties are contemplated and when some term or terms of the contract are left open and undetermined.
>
> The continuity of an account is broken where there has been a change in the relationship between the parties, or where the account has been allowed to become dormant.

*Id.* at 1159-1160, quoting 1 American Jurisprudence 2d, Accounts and Accounting, Section 4 (2005). The *Smither* court, therefore, applied the statute of limitations applicable to open accounts to the claim against Smither for credit card debt. *Smither*, 919 N.E.2d at 1160, quoting 1 American Jurisprudence 2d, Accounts and Accounting, Section 22 (2005) ("The general rule is that the statute of limitations for an action on an open account 'commences from the date the account is due.'"). Accordingly, the Indiana appellate court concluded that the cause of action on the open account accrued either as of the date of Smither's last payment on the account or, because Asset sent another statement the following month, on the next payment due date. *Id.* at 1160.

**{¶35}** This Court is persuaded by the reasoning of *Smither* and its reliance on the common law definition of an "open account" in determining that the statute of limitations begins to run after the last activity on the account. *See also Barnets, Inc. v. Johnson*, 12th Dist. No. CA2004-02-005, 2005-Ohio-682, ¶ 18 (concluding that the cause of action on an open account secured by a mortgage accrued for statute of limitations purposes when the last item was posted on the account, in that case, a returned check). In this case, Jarvis' "single liability" for the balance of her credit card account arose "following the last entry in the account" which would have been her $50 payment on June 28, 2006. Chase accepted that payment and there is no evidence that Jarvis attempted to make a subsequent payment that was rejected. Moreover, because the defendants did not attach any evidence to demonstrate the next due date after the June 28, 2006 payment, this Court concludes that a question of fact exists as to whether the statute of limitations began to run on June 29, 2006, or on some date in July 2006. However, that does not create a genuine issue of material fact because both time periods are after the effective date of the borrowing statute. Accordingly, the trial court erred by finding that the

defendants met their burden to show that Investment Corp.'s cause of action accrued prior to the effective date of Ohio's borrowing statute. On the other hand, Ms. Jarvis met her burden by demonstrating that, given the parties' agreement that the last payment was posted to the account on June 28, 2006, Investment Corp.'s cause of action accrued after R.C. 2305.03(B) became effective.

{¶36} For the above reasons, the trial court erred by granting summary judgment to the defendants upon finding that Ohio's borrowing statute was not applicable and that Investment Corp.'s cause of action was not time-barred. Accordingly, this matter is remanded to the trial court for resolution of Ms. Jarvis' claims pursuant to the FDCPA and OCSPA and her claim for abuse of process, as this Court will not determine those issues in the first instance. *See Harris-Coker v. Abraham*, 9th Dist. No. 26053, 2012-Ohio-4135, ¶ 4.

{¶37} Ms. Jarvis also asserted claims against Investment Corp., Ms. Hockenberry, and Cheek Law pursuant to the FDCPA and OCSPA based on their claims that Investment Corp. was entitled to post-judgment interest in excess of the statutory rate and efforts to obtain such interest. The statutory rate of interest was 4 percent at the time the various defendants sought to obtain it. *See* R.C. 1343.03. The defendants sought to obtain future interest at a rate of 24 percent. The trial court, relying on a federal district court case out of Massachusetts, found that Ms. Jarvis failed to show that the defendants violated the FDCPA or OCSPA by merely requesting interest in excess of the statutory rate because the request was merely a prayer for relief directed to the court, not Ms. Jarvis. *See Argentieri v. Fisher Landscapes, Inc.*, 15 F.Supp.2d 55, 61-62 (D.Mass.1998). Moreover, the trial court found that, because Investment Corp. dismissed its complaint against Ms. Jarvis, the issue of future interest was no longer before it.

{¶38} A party is not entitled to interest in excess of the statutory rate in the absence of a written contract providing for such. *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, ¶ 26; *Capital One Bank (USA), N.A. v. Heidebrink*, 6th Dist. No. OT-08-049, 2009-Ohio-2931, ¶ 37; *see also* R.C. 1343.03(A). The defendants failed to attach the credit card agreement relevant to Ms. Jarvis' account to either the complaint on the account pursuant to Civ.R. 10(D) or as an exhibit relevant to their motions for summary judgment or responses in opposition to Ms. Jarvis' motion for summary judgment. Moreover, monthly credit card statements are insufficient to constitute a written contract entitling one party to interest in excess of the statutory rate. *Meyer*, 2008-Ohio-1259, at ¶ 27. Accordingly, the defendants did not meet their initial burden of showing that Investment Corp. was entitled to 24 percent interest or any other rate in excess of the statutory rate (4 percent) in effect at the time it filed its complaint.

{¶39} The *Argentieri* court opined: "A prayer for relief in a complaint, even where it specifies the quantity of attorney's fees, is just that: a request to a third party – the court – for consideration, not a demand to the debtor himself. A request for attorney's fees ultimately rests upon the discretion of the court and a determination of applicability at a later stage of the litigation. The whole purpose of regulating debt collection was to 'supervise' a range of unsupervised contacts, such as demand letters and late-night telephone calls. In contrast, a statement in a pleading is supervised by the court and monitored by counsel. The two situations are drastically different." *Argentieri*, 15 F.Supp.2d at 61-62. This Court is not persuaded by the Massachusetts district court's opinion and reasoning.

{¶40} The issue of the viability of FDCPA claims based on prayers for relief in complaints is predominantly raised in regard to requests for attorney fees. This Court finds the

instant matter involving a request for interest analogous. The Federal District Court for Montana rejected the reasoning of *Argentieri*, noting that, in its case, the complaint clearly demanded judgment against the defendant for attorney fees. *McCollough v. Johnson, Rodenberg & Lauinger*, 587 F.Supp.2d 1170, 1178 (D.Mont.2008). In Ohio, the Federal District Court for the Southern District of Ohio also found a violation of the FDCPA where a creditor prayed for attorney fees when it was not entitled to such fees pursuant to law. *Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783, 802 (S.D.Ohio 2006). The *Foster* court reasoned that the prayer for such relief "constitute[d] an absolute entitlement to attorney fees, even though such fees are not recoverable under Ohio law." *Id.* We are persuaded by this line of cases.

{¶41} In this case, Investment Corp. concluded in its complaint against Ms. Jarvis: "WHEREFORE, Plaintiff *demands* judgment *against [Ms. Jarvis]* for the charged off sum of $8,765.37 plus accrued interest of $7,738.99, *plus future interest at 24.00%* after March 02, 2010 plus costs of this action." (Emphasis added.) It was clear under these circumstances that Investment Corp. was enunciating its absolute entitlement to interest at a rate of 24 percent and that it was demanding such from Ms. Jarvis, not from the trial court. Accordingly, Ms. Jarvis established a prima facie claim against the defendants under the FDCPA, and consequently the OCSPA, as those claims related to the request for interest in excess of the statutory rate. This, however, does not end our inquiry.

{¶42} "Courts have characterized the FDCPA as a strict liability statute, meaning that a consumer may recover statutory damages if a debt collector violates the FDCPA even if the consumer suffered no actual damages." *Fed. Home Loan Mtg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir.2007). A very limited exception to the strict liability imposed by the FDCPA is the bona fide error defense which provides: "A debt collector may not be held liable in any action

brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir.2009). Because the trial court found that a prayer in a complaint for interest was not a demand to the debtor, it did not consider whether genuine issues of material fact existed regarding the existence of a bona fide error defense. This Court declines to address that issue in the first instance. *See Harris-Coker*, 2012-Ohio-4135, at ¶ 4. Accordingly, we remand the matter to the trial court for further consideration.

{¶43} For the reasons enunciated above, Ms. Jarvis' consolidated assignment of error is sustained as it assigns error to the trial court's granting summary judgment in favor of the defendants. Because we are remanding the matter to the trial court for further consideration of issues it did not previously address, Ms. Jarvis' assignment of error is overruled as it assigns error to the trial court's denial of her motion for summary judgment.

III.

{¶44} Ms. Jarvis' consolidated assignment of error is sustained in part. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
And cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
CONCURS.

DICKINSON, J.
CONCURRING IN PART AND DISSENTING IN PART.

{¶45} I agree that First Resolution Investment Corporation's claim against Sandra Jarvis accrued in Delaware after Section 2305.03(B) of the Ohio Revised Code became effective. I also agree that Ms. Jarvis's claim that First Resolution Management Corporation and Cheek Law Offices violated the Fair Debt Collection Practices Act by threatening to file suit on a time-barred claim and her claim that First Resolution Investment Corporation, Cheek, and Parri Hockenberry violated the Act by filing suit on a time-barred claim must be remanded so that the trial court can determine the unresolved issues related to those claims in the first instance.

Although I am not convinced that the mere filing of a time-barred claim violates the Act, none of the parties have made that argument to this Court. Instead, First Resolution Investment Corporation, Cheek, and Parri Hockenberry have limited their argument to asserting that Ms. Jarvis cannot demonstrate that they knowingly filed a time-barred claim. Upon review of the record, I believe there is a genuine issue of material fact regarding whether they acted knowingly, so a remand to the trial court is an appropriate disposition of that claim.

{¶46} On the other hand, I do not believe that a demand in a complaint for interest in excess of the statutory rate violates the Fair Debt Collection Practices Act. Under United States Code Title 15 Section 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." That includes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. 1692e(10). A debt collector may also "not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. 1692f. That includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. 1692f(1).

{¶47} The Fair Debt Collection Practices Act was enacted in light of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. 1692(a). Congress found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. The purpose of the act is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using

abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. 1692(e).

**{¶48}** Because the Fair Debt Collection Practices Act is remedial legislation, I agree that it should be liberally construed in favor of the individuals it is designed to protect. *See Dennie v. Hurst Constr. Inc.*, 9th Dist. No. 06CA009055, 2008-Ohio-6350, ¶ 8 (explaining that the Consumer Sales Practices Act should be liberally construed). Nevertheless, I do not believe that a demand for interest in a complaint is the type of practice that the act prohibits. As the Honorable Nancy Gernter of the United States District Court of Massachusetts explained, "[a] prayer for relief in a complaint . . . is just that: a request to a third party—the court—for consideration, not a demand to the debtor himself." *Argentieri v. Fisher Landscapes Inc.*, 15 F. Supp. 2d 55, 61 (D. Mass. 1998). The "whole purpose of regulating debt collection was to 'supervise' a range of unsupervised contacts, such as demand letters and late-night telephone calls. In contrast, a statement in a pleading is supervised by the court and monitored by counsel." *Id.* at 61-62. "The courts have their own system of protections against abusive tactics that occur during litigation. A grossly exaggerated debt or unfounded claim in a pleading could represent an abuse of process, and subject the attorney or client to sanctions or other disciplinary mechanisms. Given these protections, when a claim is made to the court, there is no need to invoke the protections of a statute designed to protect consumers from unscrupulous, unsupervised debt collection tactics such as threats of violence and harassing telephone calls." *Id.* at 62; *see also B-Real LLC v. Rogers*, 405 B.R. 428, 432 (M.D. La. 2009) ("While the FDCPA's purpose is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its

officers."); *Cisneros v. Neuheisel Law Firm P.C.*, No. CV06-1467-PHX-DGC, 2008 WL 65608, *3 (D. Ariz. Jan. 3, 2008).

{¶49} Not only does an interest demand in a complaint not resemble the type of activity intended to be protected by the Fair Debt Collection Practices Act, it does not fall within the Act's language. Under Ohio law, a court will award interest at a higher-than-statutory rate only if it is explicitly provided in a written contract. R.C. 1343.03(A). Accordingly, a mere demand for a higher rate of interest cannot be deemed a "false, deceptive, or misleading representation" under Section 1692e of Title 15 of the United States Code. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 333 (6th Cir. 2006) (concluding that it is not a deceptive practice for a debt collector to file a lawsuit "without the immediate means of proving the existence, amount, or true owner of the debt[.]"). Similarly, asking for a non-statutory rate of interest cannot be considered an "unfair or unconscionable" practice under Section 1692f because a debt collector will only be able to recover interest at the requested rate if it establishes that it is contractually entitled to that rate. I, therefore, believe that the trial court correctly granted summary judgment to First Resolution Investment Corporation on Ms. Jarvis's post-judgment-interest-rate claim.

APPEARANCES:

JAMES F. BURKE, JR. and JOHN J. HORRIGAN, Attorneys at Law, for Appellant.

JEFFREY TURNER, BOYD W. GENTRY, and JOHN P. LANGENDERFER, Attorneys at Law, for Appellee.