[Cite as *Midland Funding, L.L.C. v. Hottenroth*, 2014-Ohio-5680.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
EN BANC
**No. 100146**

**MIDLAND FUNDING L.L.C.**

PLAINTIFF-APPELLEE

vs.

**DUSTIE HOTTENROTH**
**N.K.A. DUSTIE MILLER**

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED IN PART
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-10-729712

**BEFORE:** En Banc Court

**RELEASED AND JOURNALIZED:** December 24, 2014

**ATTORNEYS FOR APPELLANT**

Robert S. Belovich
9100 South Hills Blvd.
Suite 300
Broadview Heights, OH   44147

Anand N. Misra
The Misra Law Firm, L.L.C.
3659 Green Road
Suite 100
Beachwood, OH   44122


**ATTORNEYS FOR APPELLEE**

**For Midland Funding, L.L.C.**

Steven G. Janik
Crystal Lynn Maluchnik
Ellyn Mehendale
Sean T. Needham
Janik L.L.P.
9200 South Hills Blvd.
Suite 300
Broadview Heights, OH   44147

Sam A. Benson
1100 Superior Avenue
19th Floor
Cleveland, OH   44114

**For Javitch, Block and Rathbone, L.L.C.**

Robert G. Knirsch
Mark Brncik
James Oh
Javitch, Block & Rathbone L.L.C.
1100 Superior Avenue, 19th Floor
Cleveland, OH   44114-1503

SEAN C. GALLAGHER, J.:

**{¶1}** Pursuant to App.R. 26 and Loc.App.R. 26, the en banc court determined that a conflict existed between the original panel's decision in *Midland Funding L.L.C. v. Hottenroth*, 8th Dist. Cuyahoga No. 100146, 2014-Ohio-2390, and this court's prior decision in *In re A.A.*, 8th Dist. Cuyahoga No. 85002, 2005-Ohio-2618, on the following question, as advanced in appellant's sixth and seventh assignments of error: is an appellant's failure to include a copy of all challenged judgments or orders with the notice of appeal, or to identify them in the notice of appeal, a jurisdictional defect, or is it a rules violation that gives the appellate court the discretion to take appropriate action, including dismissal? To secure and maintain uniformity of decisions within the district, we vacate the panel's decision, consider Miller's sixth and seventh assignments of error en banc, and reissue the original panel decision regarding the unaffected assignments of error.[1]

**Decision of the En Banc Court:**

**{¶2}** In Miller's sixth and seventh assignments of error, she claims the trial court erred by dismissing two other defendants and denying a motion for sanctions against a third defendant. The relevant decisions, however, were interlocutory in nature. Miller failed to include a copy of each judgment in her notice of appeal as required by App.R. 3(D) and Loc.App.R. 3(B).

**{¶3}** This court has previously held, the purpose of a notice of appeal is to notify appellees of the appeal and advise them of the scope of the appeal, and the failure to provide the appropriate notice, through attachment of the judgments or orders being appealed to the notice of appeal, was a jurisdictional defect. *Parks v. Baltimore & Ohio RR.*, 77 Ohio App.3d 426, 427,

---

[1] The original announcement of decision, *Midland Funding L.L.C. v. Hottenroth,* 8th Dist. Cuyahoga No. 100146, 2014-Ohio-2390, released June 5, 2014, is hereby vacated. This opinion is the court's journalized decision in this appeal.

602 N.E.2d 674 (8th Dist.1991), citing *Maritime Mfrs., Inc. v. Hi-Skipper Marina*, 70 Ohio St.2d 257, 258-259, 436 N.E.2d 1034 (1982). To the contrary, this court also recognized that Loc.App.R. 3(B) expressly provides that the failure to attach the judgment or order appealed from is not a jurisdictional defect. In resolving this intra-district conflict in favor of the discretionary approach, we recognize that the Ohio Supreme Court agreed and held that appellate courts enjoy discretion to dismiss appeals for failure to comply with App.R. 3. *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320, 322-323, 649 N.E.2d 1229 (1995); *see also In re A.A.,* 8th Dist. Cuyahoga No. 85002, 2005-Ohio-2618, ¶ 21; *Consol. Church Fin. Co. v. Geauga Savs. Bank*, 8th Dist. Cuyahoga No. 94715, 2011-Ohio-1360, ¶ 10.

{¶4} In this case, the three defendants with interests in the outcome of the last two assignments of error were never put on notice of Miller's intent to appeal the trial court's interlocutory decisions, which were not attached to the notice of appeal as required by App.R. 3 and Loc.App.R. 3(B). Accordingly, in exercising our discretion, we decline to consider Miller's sixth and seventh assignments of error. *Geauga Savs. Bank*, 8th Dist. Cuyahoga No. 94715, 2011-Ohio-1360, ¶ 10.

SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, A.J.,
PATRICIA ANN BLACKMON, J.,
FRANK D. CELEBREZZE, JR., J.,
EILEEN A. GALLAGHER, J.,
EILEEN T. GALLAGHER, J.,
MARY EILEEN KILBANE, J.,
KATHLEEN ANN KEOUGH, J.,
LARRY A. JONES. SR., J.,
TIM McCORMACK, J.,
KENNETH A. ROCCO, J., and
MELODY J. STEWART, J., CONCUR.

**Decision of the Merit Panel:**

SEAN C. GALLAGHER, P.J.:

{**¶5**} Counterclaim-plaintiff Dustie Miller, f.k.a. Dustie Hottenroth ("Miller"), appeals from the trial court's decision granting summary judgment in favor of Midland Funding, L.L.C., and Javitch, Block, and Rathbone, L.L.P. (collectively "defendants").[2] For the following reasons, we reverse in part and and remand to the trial court for further proceedings.

{**¶6**} The underlying facts are fairly straightforward. According to the exhibits in the record, especially those attached to Miller's deposition that included a complete compilation of all billing records for account No. xxxx-xxxx-xxxx-9562, the credit limit on that account was exceeded sometime in April 2004. Between April 2004 and April 2005, payments were continually posted to the account, but several times the account reflected a nominal amount past due, which was immediately paid. For example, as of the October 15–November 12, 2004 billing cycle, the statement reflects a total balance of $4,409.41, but that Miller owed $80 as an amount past due, $78 for the minimum payment for that billing cycle, and $409.41 for the amount she exceeded the credit limit. In fine print at the bottom of the document, Bank of America deemed the account "currently closed." Miller tendered an $80 payment before the due date for that billing cycle. Thereafter, despite the account being deemed closed, Miller kept the account from accumulating an amount past due until sometime in April 2005; in other words, she never allowed a past-due amount to accrue for longer than 30 days.

---

[2] For the purposes of this appeal, we will refer to the plaintiff Midland Funding and counterclaim defendant Javitch, Block, and Rathbone, L.L.P., as "defendants" for ease of reference in consideration of their roles in the counterclaim advanced.

**{¶7}** No payment was tendered as of the April 12, 2005 due date, for that billing cycle, and the overdue balance grew. It was not until October 2005 that Bank of America first requested that Miller pay the entire balance owed as the minimum payment required, at that time being the sum of $4,180.84, pursuant to the default provision of the credit agreement. Thereafter, Bank of America sought the entire amount owed as the minimum monthly balance until October 26, 2006, when Bank of America charged off the remaining balance.

**{¶8}** On that date, Bank of America charged off $5,050.43 from the xxxx-xxxx-xxxx-9562 account, representing the closing balance for that billing cycle. The apparent opening balance, denoted as the previous balance, on the November 2006 billing statement for account No. xxxx-xxxx-xxxx-7342 was $5,064.50.[3] Relying on the defendants' evidentiary submissions, including affidavits and depositions from the defendants' representatives, the defendants claimed Miller's account was a single account, only differing with respect to the account numbers as the charge-off balance was prepared for resale.

**{¶9}** Ultimately, in January 2008, the xxxx-xxxx-xxxx-7342 account was again officially charged off and the $5,427.24 balance was transferred through a purchase agreement to Midland Funding. Midland Funding began pursuing debt collection actions culminating in the April 5, 2010 filing of the underlying claim against Miller, based on the xxxx-xxxx-xxxx-9562 account, seeking a judgment in the amount of $4,129.81. Midland Funding used a Euclid, Ohio, address for Miller for the purposes of serving Miller and establishing venue in Ohio. Miller disputed

---

[3]The only explanation for the discrepancy between the charge-off amount and the opening balance in the latter account number came at oral argument. The defendants claimed the $14.07 difference was due to interest accumulation, although the statements never reflected accumulated interest being added to the charge-off amount from the immediately preceding billing statement.

residing at that address at the commencement of the case, claiming to have moved there at the end of April 2010.

{¶10} Miller answered the complaint and filed a counterclaim asserting on behalf of herself and other similarly situated persons, several claims against the defendants for violations of the Fair Debt Collection Practices Act ("FDCPA") and Ohio's Consumer Sales Practices Act ("OCSPA"). Succinctly stated, Miller claimed that the defendants violated the FDCPA and OCSPA by (1) commencing and maintaining a time-barred lawsuit; (2) concealing material information in the lawsuit; (3) making false representations in the lawsuit; (4) demanding interest and costs in the lawsuit; (4) causing the lawsuits to be reported to the credit bureaus; (5) filing lawsuits without conducting an adequate investigation of the debt; and (6) filing the lawsuit in a territory in which Miller did not reside. Miller also advanced common law tort claims of abuse of process, defamation, civil conspiracy, and fraud.

{¶11} The trial court granted Midland Funding leave to amend the complaint, filed on August 13, 2010. Three days later, Midland Funding dismissed the complaint without prejudice, prior to the deadline to file an answer. Simultaneously, Midland Funding argued that the entire case should be dismissed because the amended complaint was dismissed prior to an amended answer, and according to Midland Funding, the counterclaim ceased to exist. The trial court dispensed with that argument, but upon summary judgment, condensed Miller's claims into two basic causes of action based on the filing of a time-barred claim in a territory in which Miller did not reside.

{¶12} The trial court determined that there were no genuine issues of material fact regarding the date that the cause of action accrued and where Miller lived on April 5, 2010. The trial court determined that all of Miller's claims failed as a matter of law because the 15-year

statute of limitations, pursuant to the version of R.C. 2305.06 in effect at the time, applied to the facts of this case because the cause of action accrued in October 2004 when the account was closed. In so ruling, the trial court expressly relied on the statute of limitations prior to the April 7, 2005 enactment of the borrowing statute, R.C. 2305.03(B). Further, the trial court held that Miller lived at the Euclid, Ohio address on the date the action was commenced. Miller timely appealed from the trial court's decision.

{¶13} Despite starting from the deceptively simple origins of an action arising from a consumer debt, this case became unduly complicated, in part brought upon by the parties' inability to accurately set forth the facts as presented in the documentary evidence. The crux of the issues before the trial court and upon this appeal focus on a statute of limitations issue and Miller's place of residence on April 5, 2010. In this regard, precisely identifying the pertinent dates is paramount to the resolution of the claims.

{¶14} Before addressing the merits of the appeal, we must address the procedural posture of this case. Miller's counterclaim advanced claims on behalf of a putative class. In the midst of several discovery disputes, the trial court indefinitely stayed discovery on the class certification issue, and only allowed Miller to proceed with discovery on the merits of her individual claims. In granting the defendants' motion for summary judgment, the trial court dismissed the counterclaim. On appeal, this court sought additional briefing on whether the dismissal of Miller's individual counterclaims created a final appealable order in light of the fact that the order omitted any reference to disposing of the class action claims. Both parties filed supplemental briefs agreeing that the trial court's summary judgment opinion disposed of all claims.

**{¶15}** We are compelled to note, however, that the defendants' claim that the class action allegations were mooted — by the fact that Miller failed to advance claims for class certification prior to the court's resolution of her individual claims — is misplaced. The trial court's intercession staying discovery absolved Miller of the responsibility of filing for class certification in order to preserve the putative class's claims for appeal. *See Hoban v. Natl. City Bank*, 8th Dist. Cuyahoga No. 84321, 2004-Ohio-6115, ¶ 22 (string citing authority stating that the "mootness doctrine" could not be invoked in situations where a plaintiff is prevented from seeking class certification). Nevertheless, the trial court's June 25, 2013 order granting judgment in the defendants' favor dismissed the entirety of Miller's counterclaim, including any class action component. Miller never challenged this dismissal with respect to the class-wide allegations, and therefore, all claims were disposed of for the purposes of R.C. 2505.02. Further, Miller only appealed the trial court's decision with respect to her individual claims, so we need not delve into the class action component of the counterclaim.

**{¶16}** Turning to the merits of the claim, appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

> Summary judgment may be granted only when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party.

*Marusa v. Erie Ins. Co.*, 136 Ohio St.3d 118, 2013-Ohio-1957, 991 N.E.2d 232, ¶ 7. A party requesting summary judgment bears the initial burden to show the basis of the motion. *Dresher v. Burt*, 75 Ohio St.3d 280, 293-294, 662 N.E.2d 264 (1996). Only when the moving party satisfies this burden of production is the opposing party's reciprocal burden triggered, requiring

introduction of evidence allowed under Civ.R. 56(C) to demonstrate genuine issues of material fact. *Id.*

{¶17} In Miller's first, second, third, fourth, and ninth assignments of error, she claims the trial court erred in granting summary judgment upon the counterclaim because of the existence of genuine issues of material fact. After thoroughly reviewing the record, we agree and hold that the trial court erred by applying the 15-year statute of limitations for a written contract pursuant to the pre-September 2012 version of R.C. 2305.06, by determining that the defendants' claims accrued in October 2004, in failing to apply the borrowing statute R.C. 2305.03(B) to the facts of this case, and by determining that no genuine issues of material fact existed with regard to Miller's permanent residency as of April 5, 2010.

{¶18} "A debt collector violates [15 U.S.C.] 1692e by, among other things, falsely representing 'the character, amount, or legal status of any debt.'" *Dudek v. Thomas & Thomas Attys. & Counselors at Law, LLC*, 702 F.Supp.2d 826, 833 (N.D.Ohio 2010), citing 15 U.S.C. 1692e(2)(A). "'Common sense dictates that whether a debt is time-barred is directly related to the legal status of that debt.'" *Id.*, quoting *Gervais v. Riddle & Assocs., P.C.*, 479 F.Supp.2d 270, 277 (D.Conn.2007). As a result, a debt collector violates the FDCPA in filing a legal action based on a time-barred debt.

{¶19} The determination as to when the defendants' claim accrued based on the alleged debt is of paramount concern to the resolution of the claims. Rather than addressing this issue, the trial court, admittedly upon the urging of the parties, accepted Miller's statement, in her brief in opposition to summary judgment, that the defendants' claim accrued in October 2004 when Bank of America deemed the account as being "currently closed." The parties provided no authority for the proposition that the date of the closing of the account is the date the cause of

action definitively accrued, and the affidavits attached in support of defendants' respective motions for summary judgment are simply incorrect as compared to the billing statements, creating a genuine issue of material fact regarding when Midland Funding's cause of action accrued.

{¶20} In particular, in her February 15, 2011 affidavit, Melinda Stephenson claimed that Bank of America was owed the sum of $5,427.24 on October 15, 2005, but that the xxxx-xxxx-xxxx-7342 account was the same as the original xxxx-xxxx-xxxx-9562 account, despite the fact that the former did not exist until November 2006. According to those same records, the balance on account No. xxxx-xxxx-xxxx-9562 was $4,180.84 as of the October 2005 statement, and the amount actually charged off on October 26, 2006, was $5,050.43. It was not until January 2008 that Bank of America sold the xxxx-xxxx-xxxx-7342 account, then totaling $5,427.24, to Midland Funding. Likewise, according to Joel Rathbone's affidavit, the law firm used Midland Funding's date of October 15, 2005, as the date the xxxx-xxxx-xxxx-9562 account was charged off and transferred to the xxxx-xxxx-xxxx-7342 account number. He further stated that the only discrepancy in their records was the account numbers used to identify the single account, although the charge-off amount from the original account number did not match the opening balance of the later one.

{¶21} While the exact accrual date is beyond the scope of this appeal, the bookend dates are determinable as a matter of law. The accrual date for a credit card debt has largely been unsettled, "in part because courts have not consistently categorized credit card accounts." *Jarvis v. First Resolution Invest. Corp.*, 9th Dist. Summit No. 26042, 2012-Ohio-5653, ¶ 33. In recognition of the unsettled law, the Ninth District held that credit card accounts are open accounts based on the legislature's definition of account to include "a right to payment of a

monetary obligation, whether or not earned by performance, arising out of the use of a credit or charge card." *Id.*, citing R.C. 1309.102(A)(2)(a). According to the common law definition, an open account is an "account with a balance which has not been ascertained and is kept open in anticipation of future transactions." *Id.* at ¶ 34, citing *Smither v. Asset Acceptance, L.L.C.*, 919 N.E.2d 1153, 1159 (Ind.App.2010). An account remains open until "one of the parties wishes to settle and close the account, and where there is but one single and indivisible liability arising from the such series of related and reciprocal debits and credits." *Id.* Thus, an account remains open until both settled to a single liability and closed by one of the parties.

{¶22} In light of the evidentiary submissions by defendants in prosecuting their respective motions for summary judgment, it is undisputed that any claim for the xxxx-xxxx-xxxx-9562 account number accrued after April 7, 2005, the effective date of the borrowing statute. In this regard, the court erred as a matter of law by failing to apply the borrowing statute to the claims in this case. According to the April 2005 billing statement, the xxxx-xxxx-xxxx-9562 account was past due. Prior to that billing statement, there were sporadic billing cycles reflecting a balance past due. The delinquency was remedied until April 12, 2005. That payment was never tendered, and thus Miller could not have defaulted until April 12, 2005. Also, because Miller continued to make payments, the fact that Bank of America deemed the account "currently closed" is of no consequence for the purposes of this case. The account was not settled to a single liability until October 2005 when Bank of America both closed the account and sought the entire amount owed as a lump-sum payment, as a consequence to Miller's default. *Jarvis* at ¶ 34.

{¶23} April 12, 2005, is the earliest the cause of action could have accrued, seven days after the enactment of the borrowing statute. Midland Funding conceded as much in its motions

for summary judgment, identifying the April 2005 billing statement as the date that Miller finally defaulted on her obligation by failing to remit a payment for the amount she owed that was past due. The Rathbone affidavit attached to Javitch's motion for summary judgment indicated that the charge-off date was the appropriate date for the purposes of resolving the statute of limitations issues. Thus, the undisputed evidence demonstrated that the earliest accrual date of Midland Funding's purchased claim against Miller was April 12, 2005. The trial court erred in determining an earlier date and by not applying the borrowing statute to the facts of the current claim.

{¶24} Defendants also claim that the shortest statute of limitations that could possibly be applicable is a three-year term and that Miller made sporadic payments to the xxxx-xxxx-xxxx-9562 and xxxx-xxxx-xxxx-7342 account numbers until April 16, 2007, thereby prolonging the accrual date for their claim against Miller until April 16, 2010. Typically, the making of a partial payment on an open account before the statute of limitations expires extends the implied promise to pay the balance owed amount, acting to renew the statute of limitations period. *Himelfarb v. Am. Express Co.*, 301 Md. 698, 705, 484 A.2d 1013 (1984).

{¶25} Even if those payments did act to extend the statute of limitations, although a payment was posted in the xxxx-xxxx-xxxx-7342 account on April 16, 2007, that payment was rejected by Bank of America on May 2, 2007. The last actual payment accepted by the creditor was posted on March 15, 2007. Generally, in order

> [t]o interrupt the running of the statute of limitations, the part payment must be the debtor's voluntary act * * *. A "voluntary payment" for this purpose is one that is intentionally and consciously *made and accepted as part payment* of the particular debt in question, under such circumstances as would warrant a clear inference that the debtor assents to and acknowledges that a greater debt is due as an existing liability.

(Emphasis added.)  51 American Jurisprudence 2d, Limitation of Actions, Section 328 (2014); *see also Martin v. Brown*, 716 N.E.2d 1030, 1034 (Ind.App.1999).  Under the defendants' theory, therefore, the claim accrued at the latest on March 15, 2007, the date of the last accepted payment.

{¶26} In short, sometime between April 12, 2005 and March 15, 2007, lies the accrual date of the claim for the purposes of determining whether the April 5, 2010 complaint was timely.  It is undisputed, therefore, that the borrowing statute applied and the trial court erred by applying Ohio's statute of limitations without consideration of R.C. 2305.03(B).  Accordingly we must remand for resolution of the implications of R.C. 2305.03(B).  *See Jarvis*, 9th Dist. Summit No. 26042, 2012-Ohio-5653.

{¶27} Finally, there remains a genuine issue of material fact as to whether Miller lived in Euclid, Ohio, on April 5, 2010.  15 U.S.C. 1692i provides that a debt collector shall file an action only in the judicial district in which the consumer signed the contract or in which the consumer resides at the commencement of the action.

> The term "reside" has a commonly accepted meaning. Dictionaries define "reside" as "to live in a place for a permanent or extended time," Webster's II New College Dictionary 943 (2001), or to "live, dwell . . . to have a settled abode for a time . . . ." Black's Law Dictionary (5th ed. 1979). An ordinary person would understand that a person resides where the person regularly lives or has a home as opposed to where the person might visit or vacation.

*United States v. Namey*, 364 F.3d 843, 845 (6th Cir.2004); *Nationwide Property Cas. Ins. Co. v. Kavanaugh*, 2d Dist. Montgomery No. 25747, 2013-Ohio-4730, ¶ 33.

{¶28} Defendants argue that Miller resided in Euclid, Ohio, and Ripley, West Virginia, on the date they commenced the underlying case against her.  Miller disputes that and presented evidence that she moved to Euclid at the end of April 2010, including a United States Postal

Service permanent change of address form, bank statements demonstrating purchases being made primarily in West Virginia during April 2010, and her own deposition testimony.

{¶29} In its motion for summary judgment, Javitch solely relied on the fact that Miller's bank or credit card accounts indicated transactions occurring in Ohio around the time the lawsuit was filed and that a bank form indicated Miller used the Euclid, Ohio address. Midland Funding relied on the fact that Miller moved to the address sometime after the lawsuit was filed. Neither argument satisfies the defendants' burden to demonstrate the lack of genuine issues of material fact for the purposes of summary judgment. Javitch's evidence is open to interpretation and is contradicted by Miller's deposition testimony stating the bank account was opened before she moved out of Ohio and got married. Simply making purchases in Ohio is insufficient to establish residency in light of the undisputed fact that Miller's family, whom she may have been visiting, lived in Ohio. Further, Midland Funding's argument fails to address the issue of where Miller resided at the commencement of the lawsuit. The trial court accepted the defendants' arguments without consideration of the evidence presented in response. As a result, based on the evidence considered in a light most favorable to the nonmoving party, there is an issue of fact regarding whether Miller resided in Euclid, Ohio, at the commencement of the lawsuit.

{¶30} Accordingly, Miller's first, second, third, fourth, and ninth assignments of error are sustained. The trial court erred in failing to consider the implications of R.C. 2305.03(B), and genuine issues of material fact exist with respect to Miller's residence at the commencement of Midland Funding's now dismissed action. We must reverse the trial court's decision granting summary judgment upon Miller's individual claims.[4]

---

[4]Our resolution of these assignments of error moot Miller's eighth assignment of error, in which she claims the trial court erred by failing to strike Stephenson's affidavit originally included for the purposes of resolving the

**{¶31}** The decision of the trial court is reversed in part and the case is remanded for further proceedings.

It is ordered that appellant and appellees share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
EILEEN T. GALLAGHER, J., CONCUR

---

motions for summary judgment.