[Cite as *N. Chem. Blending Corp., Inc. v. Strib Industries, Inc., D.B.A. Prod. Chem.*, 2018-Ohio-3364.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105911**

**NORTHERN CHEMICAL
BLENDING CORP., INC.**

PLAINTIFF-APPELLANT

vs.

**STRIB INDUSTRIES, INC., D.B.A.,
PRODUCTS CHEMICAL, ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-857980

**BEFORE:** E.T. Gallagher, P.J., S. Gallagher, J., and Jones, J.

**RELEASED AND JOURNALIZED:** August 23, 2018

**ATTORNEYS FOR APPELLANT**

Jim Petropouleas
James E. Boulas
James E. Boulas Co., L.P.A.
7912 Broadview Road
Broadview Heights, Ohio 44147


**ATTORNEYS FOR APPELLEES**

John S. Kluznik
Weston Hurd, L.L.P.
The Tower at Erieview
1301 East 9th Street, Suite 1900
Cleveland, Ohio 44114

**For ChemMasters, Inc.**

Deborah J. Michelson
Miller Goler Faeges Lapine, L.L.P.
1301 East 9th Street, Suite 2700
Cleveland Ohio 44114

**For John Stibrick**

Victor T. Dimarco
Shawn W. Maestle
Weston Hurd, L.L.P.
1301 East 9th Street, Suite 1900
Cleveland, Ohio 44114

EILEEN T. GALLAGHER, P.J.:

{¶1} Plaintiff-appellant, Northern Chemical Blending Corp., Inc. ("Northern Chemical"), appeals from the trial court's judgment granting summary judgment in favor of defendants-appellees, Strib Industries, Inc., d.b.a. Products Chemical, and John Stibrick (collectively "Strib Industries"). Northern Chemical raises the following assignments of error for review:

1. The trial court erred as a matter of law in not considering all of the evidence before it in rendering judgment in appellees' favor.

2. The trial court erred as a matter of law in granting appellees' motion for summary judgment.

{¶2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I.   Procedural and Factual History

{¶3} Northern Chemical has operated a chemical blending company since 1983 and performs filling and blending services for customers. Northern Chemical is owned and operated by John Zemaitis. Strib Industries also performs chemical filling and blending services and is owned and operated by John Stibrick.

{¶4} For approximately 25 years, Northern Chemical subcontracted certain filling and blending orders to Strib Industries for customers who required smaller packaging. Pursuant to the parties' business arrangement, Strib Industries was paid a percentage of the revenue Northern Chemical received for the product Strib Industries filled or blended on Northern Chemical's behalf. On January 1, 2006, Northern Chemical and Strib Industries entered into a confidentiality, nondisclosure, and nonuse agreement (the "Strib NDA Agreement"). The NDA

Agreement covered all work Strib Industries performed for Northern Chemical and required Strib Industries to maintain Northern Chemical's confidential information.

{¶5} In January 2009, Northern Chemical entered into a business relationship with ChemMasters, Inc. ("ChemMasters"). Pursuant to their business arrangement, Northern Chemical agreed to blend and package certain concrete sealers and coatings for ChemMasters. ChemMasters and Northern Chemical also entered into a confidentiality, nondisclosure, and nonuse agreement (the "ChemMasters NDA Agreement"), wherein Northern Chemical agreed to maintain ChemMasters' confidential information.

{¶6} Upon securing ChemMasters' business, Northern Chemical subcontracted with Strib Industries to fill the orders it received from ChemMasters. Strib Industries was paid a percentage of the revenue Northern Chemical received from ChemMasters for the products Strib Industries filled and blended. Upon relinquishing the blended product to ChemMasters, Strib Industries would invoice Northern Chemical for the amount due, with the notation that payment was due within 30 days. It was understood and agreed that Northern Chemical was to pay Strib Industries the amount invoiced no later than 10 days after Northern Chemical received payment from ChemMasters.

{¶7} In April 2014, ChemMasters ceased doing business with Northern Chemical, and began doing business directly with Strib Industries. Believing that "[Strib Industries and ChemMasters] conspired to improperly cut-out Northern Chemical from the business relationship," Northern Chemical filed a complaint against Strib Industries and ChemMasters in January 2016. The complaint sought a declaratory judgment and asserted causes of action for breach of contract, tortious interference with business relations, tortious interference with contract, accounting and restitution, misappropriation of trade secrets, and civil conspiracy.

{¶8} In March 2016, Strib Industries filed an answer brief and asserted counterclaims for breach of contract and unjust enrichment. The counterclaim sought payment of overdue invoices in the amount of $8,992.50.

{¶9} In April 2016, Northern Chemical filed a notice of voluntary dismissal of its claims against ChemMasters. Northern Chemical also voluntarily dismissed its civil conspiracy claim against Strib Industries.

{¶10} In June 2016, Strib Industries filed a "motion to deem admissions as admitted." The motion alleged that Northern Chemical failed to respond to Strib Industries' requests for admissions, which asked Northern Chemical to admit that it failed to pay Strib Industries for certain invoices. Thus, Strib Industries requested the trial court to deem the relevant discovery requests as written admissions pursuant to Civ.R. 36(A)(1). The motion was unopposed and granted by the trial court.

{¶11} In December 2016, Strib Industries filed a motion for summary judgment on its counterclaims, arguing that it is entitled to judgment in the amount of $8,992.50. Strib Industries argued that judgment was appropriate because "Northern Chemical concedes the invoices are outstanding and due to Strib Industries as evidenced by the request for admissions propounded upon Northern Chemical and which [the trial court] deemed admitted."

{¶12} In February 2017, Strib Industries filed a separate motion for summary judgment as to Northern Chemical's claims, arguing that it was entitled to judgment as a matter of law because (1) there is no evidence of a valid contract between Northern Chemical and Strib Industries, (2) there is no evidence of an exclusivity contract between Northern Chemical and ChemMasters, (3) the blending and filling services provided to ChemMasters were products that ChemMaster developed and/or formulated, and (4) it was not unlawful or improper for Strib

Industries to conduct business directly with ChemMasters based on Northern Chemical's failure to pay Strib Industries for its services.

{¶13} In support of its motions for summary judgment, Strib Industries attached copies of the pleadings, a copy of the Strib NDA Agreement, a copy of the ChemMasters NDA Agreement, pertinent portions of John Zemaitis's deposition testimony, the affidavit of John Stibrick, and copies of Northern Chemical's unpaid invoices that were deemed by the court to be written admissions.

{¶14} After receiving a 30-day extension of time, Northern Chemical filed a brief in opposition to Strib Industries' motions for summary judgment on March 3, 2017. Northern Chemical argued that genuine issues of material fact remain on their claims against Strib Industries. In addition, Northern Chemical maintained that Strib Industries is not entitled to summary judgment on its counterclaim for the unpaid invoices because Strib Industries "materially breached [its] agreement to wait until Northern Chemical was paid by ChemMasters to receive payment [from Northern Chemical]."

{¶15} Northern Chemical's opposition brief attached a copy of the Strib NDA Agreement, emails from Northern Chemical to ChemMasters regarding past due invoices, and the deposition testimony of John Stibrick.[1]

{¶16} On March 13, 2017, Strib Industries filed a reply brief in support of its motions for summary judgment and contemporaneously filed a motion to strike the certain exhibits attached to Northern Chemical's brief in opposition. In the motion to strike, Strib Industries argued that

---

[1] Northern Chemical's brief in opposition references "Plaintiff's Affidavit attached as 'Exhibit 1.'" However, no affidavit was attached to the brief.

the email correspondences attached to Northern Chemical's brief in opposition did not constitute proper evidence under Civ.R. 56(C) and were not authenticated by a properly framed affidavit.

{¶17} On March 20, 2017, Northern Chemical filed a brief in opposition to the motion to strike and requested leave of court to supplement its opposition brief with the affidavit of John Zemaitis, which was notarized on March 20, 2017. Northern Chemical argued that the affidavit properly attests to the exhibits attached to the brief in opposition pursuant to Civ.R. 56(E), and "provides no additional information that is not already provided in the brief in opposition."

{¶18} Before the trial court ruled on Northern Chemical's attempt to supplement its brief with Zemaitis's affidavit, Strib Industries filed a motion to strike the affidavit. Strib Industries argued that it would be unjust to consider the untimely affidavit because it was not attached to the brief in opposition, and therefore, Strib Industries did not have the opportunity to address the contents of the affidavit at the time Strib Industries was required to file its reply brief. Strib Industries noted that the affidavit was notarized on March 20, 2017, thereby demonstrating that the affidavit did not exist at the time the brief in opposition was filed.

{¶19} On May 18, 2017, the trial court denied Northern Chemical's request to supplement its brief in opposition with Zemaitis's affidavit. In addition, the trial court granted Strib Industries' motion to strike the affidavit and copies of certain email correspondences attached to Northern Chemical's brief in opposition. On the same day, the trial court granted Strib Industries' separate motions for summary judgment, stating in relevant part:

> Pending before the court are (A) [Strib Industries'] motion for summary judgment with respect to Northern Chemical's claims; and (B) [Strib Industries'] motion for summary judgment on its counterclaim pursuant to Civ.R. 56. * * *.

> Upon review of the evidentiary materials, and viewing the evidence most strongly in favor of the non-moving party, the court finds and concludes that no genuine issues of material fact remain to be litigated in this case and that defendants are

entitled to judgment as a matter of law. Defendants supported their motions with admissible evidence and concise, compelling legal arguments. Northern Chemical, by contrast, has not come forward with admissible evidence suggesting that there is a genuine issue for trial. Defendants' motions for summary judgment are therefore granted.

Accordingly, Northern Chemical's claims are dismissed in their entirety, with prejudice. With respect to defendant Strib Industries' counterclaim, the court awards judgment to Strib Industries in the amount of $8,992.50, plus interest at the statutory rate from the date of judgment, as well as the costs of this action.

{¶20} Northern Chemical now appeals the trial court's judgment.

## II. Law and Analysis

### A. Evidentiary Rulings

{¶21} In its first assignment of error, Northern Chemical argues "the trial court erred as a matter of law in not considering all of the evidence before it in rendering judgment in [Strib Industries'] favor." Northern Chemical contends that the trial court erred by striking the affidavit of John Zemaitis and the email correspondences referred to in his supporting affidavit.

### 1. Notice of Appeal

{¶22} Before addressing the merits of this assigned error, we must resolve Strib Industries' contention that Northern Chemical's first assignment of error fails as a matter of law because Northern Chemical's notice of appeal does not comply with App.R. 3(D) and Loc.App.R. 3(B).

{¶23} According to App.R. 3(D), the decision being appealed must be designated in the notice of appeal, and Loc.App.R. 3(B) requires attachment of that entry to the notice. In this case, Strib Industries correctly states that Northern Chemical's notice of appeal only attached the trial court's May 18, 2017 journal entry granting summary judgment in favor of Strib Industries. It did not identify or attach the trial court's separate May 18, 2017 judgment entries that granted

Strib Industries' motions to strike Zemaitis's affidavit and certain exhibits attached to Northern Chemical's brief in opposition to summary judgment.

{¶24} However, the failure to attach a copy of the order being appealed from is not a jurisdictional defect. Thus, "this court has discretion to entertain an appeal that does not comply with these rules." *Hubbard v. Charter One Bank*, 8th Dist. Cuyahoga No. 104146, 2017-Ohio-1033*, ¶ 11, citing *Midland Funding L.L.C. v. Hottenroth*, 2014-Ohio-5680, 26 N.E.3d 269, ¶ 3 (8th Dist.) (en banc). The purpose of these rules is to appropriately notify other parties to the appeal of its scope.

{¶25} As stated, the trial court found that summary judgment in favor of Strib Industries was appropriate because Northern Chemical failed to "come forward with admissible evidence suggesting that there is a genuine issue for trial." The admissibility of the evidence attached to Northern Chemical's brief in opposition was highly contested and was the subject of multiple motions. Furthermore, the validity of the court's May 18, 2017 judgments have been fully briefed by both parties on appeal. Under these circumstances, we find Strib Industries was reasonably placed on notice that Northern Chemical would be challenging the trial court's decision to strike certain evidence attached to its brief in opposition. Accordingly, we exercise our discretion to consider Northern Chemical's first assignment of error.

### 2. Motion to Strike Documentary Evidence

{¶26} A trial court's determination of a motion to strike is reviewed for an abuse of discretion. *Squire v. Geer*, 117 Ohio St.3d 506, 2008-Ohio-1432, 885 N.E.2d 213, ¶ 10. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶27}** On appeal, Northern Chemical argues the trial court abused its discretion by striking Zemaitis's affidavit and the email correspondences attached to its brief in opposition to summary judgment. Northern Chemical asserts that the excluded "email [exhibits] were not a surprise to [Strib Industries] as they were attached to the brief in opposition and the affidavit was not a surprise to [Strib Industries] as it did not deviate or provide anything outside of the brief."

**{¶28}** Civ.R. 56(C) provides, in relevant part:

Unless otherwise provided by local rule or by order of the court, the adverse party may serve responsive arguments and opposing affidavits within twenty-eight days after service of the motion, and the movant may serve reply arguments within fourteen days after service of the adverse party's response. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

**{¶29}** Civ.R. 56(E) provides, in relevant part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits.

**{¶30}** This court has previously recognized that "[u]nder Civ.R. 56(E), the proper procedure for introducing evidentiary matters not specifically authorized by Civ.R. 56(C) is to incorporate them by reference in a properly framed affidavit." *Biskupich v. Westbay Manor Nursing Home*, 33 Ohio App.3d 220, 221, 515 N.E.2d 632 (8th Dist.1986).

**{¶31}** "Documents submitted in defense against a motion for summary judgment must be properly 'sworn, certified or authenticated by affidavit' or they may not be considered in determining whether there is a triable issue of fact." *Burkhart v. H.J. Heinz Co.*, 2013-Ohio-723, 989 N.E.2d 128, ¶ 12 (6th Dist.), quoting *Green v. B.F. Goodrich Co.*, 85 Ohio App.3d 223, 228, 619 N.E.2d 497 (9th Dist.1993); *see also Douglass v. Salem Comm. Hosp.*, 153 Ohio App.3d 350, 2003-Ohio-4006, 794 N.E.2d 107, ¶ 25 (7th Dist.). Ohio courts consistently apply this rule and recognize that "documents that have not been sworn, certified, or authenticated by way of affidavit 'have no evidentiary value.'" *Mitchell v. Internatl. Flavors & Fragrances, Inc.*, 179 Ohio App.3d 365, 2008-Ohio-3697, 902 N.E.2d 37, ¶ 17 (1st Dist.), quoting *Lance Acceptance Corp. v. Claudio*, 9th Dist. Lorain No. 02CA008201, 2003-Ohio-3503, ¶ 15.

**{¶32}** In this case, Northern Chemical's brief in opposition relied extensively on unauthenticated email communications that were not incorporated into a properly framed affidavit. Strib Industries moved to strike these exhibits on grounds that they did not constitute proper evidence under Civ.R. 56(C). Although Northern Chemical subsequently attempted to incorporate the unauthenticated documents through its submission of Zemaitis's affidavit, the trial court ultimately accepted Strib Industries' position that the affidavit was untimely pursuant to Civ.R. 56(C).

**{¶33}** Despite the language of Civ.R. 56(C), Northern Chemical maintains that its submission of Zemaitis's affidavit was not untimely because it was filed well before the trial court's judgment was rendered. In support of its position, Northern Chemical relies on this court's decision in *Paul v. Metrohealth*, 8th Dist. Cuyahoga No. 71195, 1998 Ohio App. LEXIS

4964 (Oct. 22, 1998).   In *Paul*, this court reversed the trial court's exclusion of an opposing affidavit as untimely, stating:

> The trial court's determination * * * was inappropriate since the rule specifically permits the opposing party to file affidavits "prior to the day of hearing."

*Id.* at 18.

**{¶34}** After careful consideration, we are not persuaded by Northern Chemical's reliance on *Paul*.   Significantly, *Paul* interpreted a version of Civ.R. 56(C) that has since been amended.[2]   The statute no longer contains language permitting the opposing party to file affidavits "prior to the day of hearing." Rather, that language has been deleted and the statute now directs adverse parties to serve responsive arguments and opposing affidavits "within twenty-eight days after service" of the movant's motion for summary judgment.[3]

**{¶35}** In this case, Northern Chemical received a 30-day extension in time to respond to Strib Industries' motion for summary judgment and was ordered to "file its brief(s) in opposition to the two motions [for summary judgment] on or before Friday, March 3, 2017."   Northern Chemical complied with the trial court's order and filed its opposition brief on March 3, 2017. However, Northern Chemical did not attach an affidavit to its opposition brief and, without

---

[2]   Civ.R. 56(C) was amended on July 1, 2015.   The former version of Civ.R. 56(C) provided, in pertinent part:

> The motion shall be served at least fourteen days before the time fixed for hearing.   *The adverse party, prior to the day of hearing, may serve and file opposing affidavits.*   Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. (Emphasis added.)

[3]   Loc.R. 11(I)(1) of the Court of Common Pleas of Cuyahoga County, General Division, provides an opposing party 30 days to file a brief in opposition with accompanying evidentiary materials.

explanation or justification, waited two additional weeks before attempting to supplement its brief with Zemaitis's affidavit. Significantly, the affidavit was filed well beyond the time period set forth under Civ.R. 56(C), beyond the dispositive motion deadline set forth by the trial court, and after Strib Industries filed its reply brief in support of its motion for summary judgment.

{¶36} Under the totality of these circumstances, we find the trial court did not abuse its discretion in striking the untimely affidavit of John Zemaitis. As such, the email correspondences attached to Northern Chemical's brief in opposition were not incorporated by reference in a properly framed affidavit as required by Civ.R. 56(E). Accordingly, the email exhibits were not properly before the court for consideration on summary judgment and we cannot say the trial court abused its discretion by striking them from the record.

{¶37} Northern Chemical's first assignment of error is overruled.

### B. Summary Judgment

{¶38} In its second assignment of error, Northern Chemical argues the trial court erred as a matter of law in granting summary judgment in favor of Strib Industries.

{¶39} This court reviews a trial court's grant of summary judgment under the de novo standard. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

**{¶40}** Summary judgment consists of a burden-shifting framework. The movant bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Id.*; *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996); Civ.R. 56(E). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

**{¶41}** On appeal, Northern Chemical argues the trial court improperly granted summary judgment in favor of Strib Industries on its counterclaim for unpaid invoices and on its claims against Strib Industries for tortious interference with a business relationship, tortious interference with a contract, breach of contract, and misappropriation of trade secrets. For the purposes of judicial clarity, we review each claim separately.

### 1. Tortious Interference with Business Relations

**{¶42}** The elements of a tortious interference with a business relationship claim require (1) a business relationship; (2) the wrongdoer's knowledge of the relationship; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages. *Brookeside Ambulance, Inc. v. Walker Ambulance Serv.*, 112 Ohio App.3d 150, 155-156, 678 N.E.2d 248 (1996); *Spafford v. Cuyahoga Community College,* 8th Dist. Cuyahoga No. 84786, 2005-Ohio-1672.

**{¶43}** Tortious interference with a business relation occurs when "a person, without privilege, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship, or perform a contract with another." *Castle Hill Holdings, L.L.C. v. Al Hut, Inc.*, 8th Dist. Cuyahoga No. 86442, 2006-Ohio-1353, ¶ 47, citing *Juhasz v. Quik Shops, Inc.*, 55 Ohio App.2d 51, 379 N.E.2d 235 (9th Dist.1978), paragraph two of the syllabus.

**{¶44}** Whether the business relationship is an at-will relationship does not in and of itself preclude a finding that the defendant tortiously interfered with the business relationship and, therefore, is not dispositive of the claim. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 178, 707 N.E.2d 853 (1999). On the other hand, interference with the business relationship alone is insufficient to sustain a cause of action for tortious interference. *Id.* It is the improper nature of the conduct that establishes liability. *Baseball at Trotwood, L.L.C. v. Dayton Professional Baseball Club*, S.D.Ohio No. C-3-98-260, 2003 U.S. Dist. LEXIS 27460, *5 (Sept. 2, 2003).

**{¶45}** Courts must consider the following factors in determining whether the actor's means are improper:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Gracetech Inc. v. Perez*, 8th Dist. Cuyahoga No. 96913, 2012-Ohio-700, ¶ 19, quoting *Fred Siegel*, at paragraph three of the syllabus.

**{¶46}** It is undisputed that Northern Chemical and ChemMasters shared a business relationship and that Strib Industries was aware of their business relationship. However, Strib

Industries argued in its motion for summary judgment that it was not improper for John Stibrick to notify ChemMasters that it would "no longer provide services or products to Northern Chemical due to non-payment." Further, Strib Industries argued that there is no evidence to suggest Strib Industries or ChemMasters were bound to Northern Chemical under an exclusivity agreement. Thus, Strib Industries maintains that "it was not unlawful or improper for [it to conduct] business directly with ChemMasters at ChemMasters' request." Strib Industries supported its arguments with Northern Chemical's written admissions, the affidavit of John Stibrick, and the deposition testimony of John Zemaitis.

{¶47} In contrast, Northern Chemical argues that Strib Industries intentionally and without justification caused ChemMasters to end its business relationship with Northern Chemical. Specifically, Northern Chemical submits that the following factors create genuine issues of material fact regarding whether Strib Industries' intentional interference was improper:

> Defendants held a shipment of product hostage to cause the interference with the business relationship between Plaintiff and ChemMasters and left ChemMasters with the option of either finding a new supplier or doing business directly with Defendants. * * * Defendants left ChemMasters no option to do business with Defendants. * * * Defendants' motive was to force the shut out of Plaintiff and to take the entire business relationship and profits for themselves. Defendants' used the nature of their relationship with Plaintiff and the knowledge it acquired from Plaintiff of Plaintiff's processes, pricing, contacts and relationship with ChemMasters to steal the relationship.

{¶48} Our review of the relevant admissible evidence does not support Northern Chemical's position. While Northern Chemical suggests the Strib Industries' actions were unjustified, Stibrick testified that he ended his business relationship with Northern Chemical because he "wasn't being paid for my services, timely, as we had agreed." He acknowledged that Northern Chemical and Strib Industries agreed to a payment schedule where Strib Industries would not be paid by Northern Chemical until Northern Chemical was paid by ChemMasters.

However, Stibrick testified that he learned that ChemMasters "was very timely" with its payments to Northern Chemical based on conversations he had with Northern Chemical representatives.

{¶49} Stibrick explained that before Strib Industries held an order that was produced for ChemMasters, he contacted Zemaitis to determine why Northern Chemical was failing to pay outstanding invoices. According to Stibrick, Zemaitis claimed that "he was not being paid timely by ChemMasters." Thereafter, Stibrick met with ChemMasters to seek clarification. Stibrick testified that during this meeting, a representative for ChemMasters indicated that ChemMasters was paying Northern Chemical for its services in a timely fashion, despite what Zemaitis may have claimed. In light of this information, Stibrick testified that he informed ChemMasters as follows:

> I can't do business with [Northern Chemical] because [it] doesn't pay as we agreed. You can either find another vendor or supplier or we can continue to produce them, but you would have to send me, Products Chemical, the purchase orders, we would process your orders and * * * you would pay us directly.

{¶50} Stibrick testified that shortly after his meeting with ChemMasters, Strib Industries received its first purchase order from ChemMasters and, at ChemMasters' request, Strib Industries agreed to provide blending services to ChemMasters directly.

{¶51} Viewing the foregoing evidence in a light most favorable to Northern Chemical, we find there is no evidence that Strib Industries used improper means to terminate ChemMasters' business relationship with Northern Chemical.

{¶52} Collectively, the evidence attached to Strib Industries' motion for summary judgment demonstrates that Stibrick had a good faith basis to notify ChemMasters that it would no longer blend products on Northern Chemical's behalf due to Northern Chemical's failure to

pay outstanding invoices. Without competing admissible evidence regarding the status of ChemMasters' payment history with Northern Chemical, Strib Industries' communication to ChemMasters that it would no longer provide products on Northern Chemical's behalf was justified and, therefore, cannot be deemed improper. ChemMasters was free to continue its business relationship with Northern Chemical, and there is no factual or legal basis to conclude that Strib Industries improperly induced ChemMasters to end its relationship with Northern Chemical. In short, Northern Chemical cannot attempt to use the tortious interference doctrine "to thwart competition where it * * * had no reasonable expectation of exclusive dealings" with ChemMasters and there is no evidence of improper interference or inducement. *See Miller Bros. Excavating v. Stone Excavating*, 2d Dist. Greene No. 97-CA-69, 1998 Ohio App. LEXIS 104 (Jan.16, 1998).

{¶53} Moreover, Northern Chemical has not presented admissible evidence to support its assertion that Stibrick met with ChemMasters with the intention of "stealing" its business from Northern Chemical. Stibrick testified that the purpose of the meeting was to determine whether ChemMasters had been making timely payments to Northern Chemical. In addition, Zemaitis testified that he had no knowledge concerning the conversation between Stibrick and ChemMasters' representatives or how the relationship between ChemMasters and Strib Industries began.

{¶54} Accordingly, we find the trial court properly granted summary judgment in favor of Strib Industries on Northern Chemical's tortious interference with a business relationship claim.

## 2. Tortious Interference with a Contract

{¶55} The elements of a tortious interference with a contract claim include "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's

intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel*, 85 Ohio St.3d 171, 707 N.E.2d 853 (1999), at paragraph one of the syllabus.

**{¶56}** In its motion for summary judgment, Strib Industries' argued that Northern Chemical's complaint merely set forth the elements of a tortious interference with a contract claim, without "factual allegations that go to each and every one of the recited legal elements." In support of this statement, Strib Industries attached the affidavit of John Stibrick and the deposition testimony of John Zemaitis. In relevant part, Stibrick averred that he was not aware of any contract between ChemMasters and Northern Chemical. Similarly, Zemaitis conceded that ChemMasters "was free to do business with anybody" and that he was not aware if Northern Chemical had a written contract with ChemMasters. Thus, while ChemMasters had sent purchase orders to Northern Chemical in the past, there is no evidence in the record to suggest Northern Chemical and ChemMasters shared an ongoing contractual relationship, or that Strib Industries was aware of such a contractual relationship. *See, e.g., Walter v. ADT Sec. Sys., Inc.*, 10th Dist. Franklin No. 06AP-115, 2007-Ohio-3324, ¶ 31 (noting that the "main difference between tortious interference with a contract and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract.").

**{¶57}** Collectively, this evidence demonstrates the absence of material facts on the essential elements of Northern Chemical's tortious interference with a contract claim. Furthermore, Northern Chemical's brief in opposition did not present evidence to create issues of material fact as to the existence of a valid contract with ChemMasters, or Strib Industries' knowledge of the contract if one existed. Accordingly, we find the trial court properly granted

summary judgment in favor of Strib Industries on Northern Chemical's tortious interference with a contract claim.

### 3.  Breach of Contract

{¶58} To recover on a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a binding contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages resulting from the breach. *Corsaro v. ARC Westlake Village, Inc.*, 8th Dist. Cuyahoga No. 84858, 2005-Ohio-1982, ¶ 20, citing *Am. Sales, Inc. v. Boffo*, 71 Ohio App.3d 168, 175, 593 N.E.2d 316 (2d Dist.1991).

{¶59} Throughout this litigation, Northern Chemical has alleged that Strib Industries breached the Strib NDA Agreement by using Northern Chemical's confidential information, including pricing and product formula information, to create a relationship with ChemMasters. In its motion for summary judgment, Strib Industries argued that assuming the Strib NDA Agreement was valid and applied to its dealings with ChemMasters, "there is no evidence to support Northern Chemical's claim that Strib Industries breached the agreement."

{¶60} The Strib NDA Agreement provides, in pertinent part:

> 1.  Confidential Information.  "Confidential Information," for purposes of this Agreement, shall include, without limitation, (a) the existence of the discussions with the Company regarding the Possible Transaction, and (b) all information, materials, documents, including, without limitation, technical information and data, product development information and data, and financial statements, projections and other information, furnished by the Company * * * Recipient hereby acknowledges the sensitive and confidential nature of the Confidential Information and the damage that may result to the Company in the event any of such confidential information is disclosed to third parties or otherwise used improperly.

> 2.  Non-Use of Information.  Recipient shall not [use] any Confidential Information furnished by or through the Company or its employees, affiliates, agents or representatives in any manner whatsoever, in whole or in part, for any purpose other than in connection with evaluating the Possible Transaction.

3.    Non-Disclosure of Information.   Recipient shall use its best efforts to keep secret and confidential all Confidential Information provided by the Company or any of its employees, affiliates, agents or representatives, and shall not reveal any Confidential Information to any third party.

{¶61} At his deposition, Zemaitis alleged that Strib Industries breached the Strib NDA Agreement by using Northern Chemical's confidential information to steal ChemMasters as a customer.   However, Zemaitis's deposition testimony does not support this assertion.   Relevant to Strib Industries' position that it did not breach the Strib NDA Agreement, Zemaitis provided the following testimony:

Defense Counsel:    The product you were developing or producing for ChemMasters, were those formulas Northern Chemical's or ChemMasters'?

John Zemaitis:    ChemMasters'.

Defense Counsel:    So they would tell you, "here is the formula.   I want you to mix this for us?

John Zemaitis: Correct.

  * * *

Defense Counsel: Was there any information that belonged to Northern Chemical that you feel my client misued?

John Zemaitis: I can't answer that.   I don't know.

* * *

Defense Counsel: As you sit here today, are you aware of any information that Strib Industries, and when I say Strib Industries, I mean Products Chemical, Strib Industries, and John Stibrick, any information that they provided to ChemMasters that belonged to you?

John Zemaitis: No.

{¶62} In light of the foregoing testimony, we find Strib Industries met its initial burden of pointing to evidence that established its entitlement to judgment as a matter of law on Northern

Chemical's breach of contract claim. In response, Northern Chemical failed to meet its reciprocal burden. The clear and unambiguous language of the Strib NDA Agreement demonstrates that Strib Industries was only restricted from using or disclosing Northern Chemical's confidential information to third parties. Here, Zemaitis acknowledged at his deposition that the formulas used to produce or develop chemical sealants for ChemMasters were owned by ChemMasters. Thus, the record reflects that any confidential or proprietary information received or used by Strib Industries belonged to ChemMasters.

{¶63} Furthermore, we find no merit to Northern Chemical's contention that there are issues of material fact remaining as to whether Strib Industries inappropriately used or disclosed confidential information regarding Northern Chemical's pricing structure. Stibrick testified at his deposition that he and ChemMasters discussed pricing and agreed the price would be the same as the price ChemMasters previously paid to Northern Chemical. However, there is no evidence in this record to suggest that Strib Industries provided ChemMasters with any confidential information regarding pricing that ChemMasters was not already aware of given its prior business relationship with Northern Chemical. Similarly, there is no testimony to suggest Stibrick used his knowledge of Northern Chemical's pricing information to facilitate or finalize Strib Industries' business relationship with ChemMasters. Rather, the evidence demonstrates that ChemMasters' business relationship with Strib Industries began at ChemMasters' request.

{¶64} Under these circumstances, reasonable minds can conclude that in formulating its business relationship with ChemMasters, Strib Industries did not breach the Strib NDA Agreement by using or disclosing confidential information that was furnished to Strib Industries by or through Northern Chemical or its employees. The admissible evidence attached to Northern Chemical's brief in opposition does not create a genuine issue of fact for trial.

Accordingly, we find the trial court properly granted summary judgment in favor of Strib Industries on Northern Chemical's breach of contract claim.

### 4. Misappropriation of Trade Secrets

{¶65} Ohio's Uniform Trade Secrets Act, R.C. 1333.61 through 1333.69, provides for a civil remedy for the misappropriation of trade secrets.

{¶66} In its complaint, Northern Chemical alleged that Strib Industries misappropriated Northern Chemical's trade secrets in an effort to facilitate its direct business relationship with ChemMasters. The trade secrets identified in Northern Chemical's complaint include, "business information and scientific and/or technical information regarding, amongst other things, the plaintiff's customers, pricing, designs, processes, methods, and techniques."

{¶67} The Ohio Uniform Trade Secret Act, R.C. 1333.61(D), defines a "trade secret" as:

[I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

{¶68} R.C. 1333.63(B) defines "misappropriation" as any of the following:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

(a) Used improper means to acquire knowledge of the trade secret;

(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

(c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

**{¶69}** When analyzing a trade secret claim, the court must consider:

(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information. (Citation omitted.)

*Salemi v. Cleveland Metroparks*, 145 Ohio St.3d 408, 2016-Ohio-1192, 49 N.E.3d 1296, ¶ 25.

**{¶70}** Northern Chemical's trade secret claim reiterates many of the same arguments supporting its breach of contract claim. In challenging the validity of Northern Chemical's trade secrets claim, Strib Industries argued in its motion for summary judgment that there cannot be a claim for misappropriation of trade secrets where (1) "the trade secrets belonged to ChemMasters not plaintiff," and (2) "there was no information provided from Strib Industries to ChemMasters for which ChemMasters did not already have knowledge." In support of these statements, Strib Industries relies on Zemaitis's testimony that (1) the formulas Strib Industries used to produce the concrete sealer for ChemMasters were owned and/or developed by ChemMasters, and (2) he was unaware of any information Strib Industries provided to ChemMasters that belonged to Northern Chemical.

{¶71} Viewing the evidence in a light most favorable to Northern Chemical, we find Strib Industries satisfied its burden of demonstrating the absence of genuine issues of material fact of the element of "misappropriation." Initially, we note that there is no evidence that Strib Industries used improper means to "acquire" Northern Chemical's alleged trade secrets. In this case, the "trade secrets" referenced in Northern Chemical's complaint contemplates information that would have been properly provided to Strib Industries during its business relationship with Northern Chemical. It is not information that was acquired through "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *See* R.C. 1333.61(A). Moreover, Zemaitis's deposition testimony supports Strib Industries' position that the blending formulas Strib Industries used to fill ChemMasters purchase orders were owned or developed by ChemMasters. Thus, trade secrets relating to the scientific information involved in Strib Industries' production of the concrete sealant, including designs, processes, methods, and techniques, belonged to ChemMasters and not Northern Chemical.

{¶72} In addition, we find no evidence to support an allegation that Strib Industries disclosed trade secrets to ChemMasters without Northern Chemical's consent. Analogous to our resolution of Northern Chemical's breach of contract claim, we find no legal precedent to suggest Strib Industries "misappropriated trade secrets" where the record demonstrates that the "information," as defined under R.C. 1333.63(D), was already known by ChemMasters based on its prior business dealings with Northern Chemical. As stated, the record demonstrates that ChemMasters was aware of Northern Chemical's processes and/or pricing information through no act of Strib Industries. Thus, there is no evidence to suggest Strib Industries improperly disclosed information to ChemMasters that it had a duty to maintain its secrecy or limit its use.

{¶73} Northern Chemical's brief in opposition falls short of presenting genuine issues of material fact regarding the element of misappropriation as defined under the statute. Northern Chemical provided no evidence to support the mere accusations and assertions raised in its opposition brief. Accordingly, we find the trial court properly granted summary judgment in favor of Strib Industries on Northern Chemical's misappropriation of trade secrets claim.

### 5. Strib Industries' Counterclaims

{¶74} Strib Industries' raised counterclaims for breach of contract and unjust enrichment, alleging that "Northern Chemical failed to pay Strib Industries for product prepared at the request of Northern Chemical for ChemMasters and for which Northern Chemical received payment from ChemMasters."

{¶75} In its motion for summary judgment, Strib Industries' argued that Northern Chemical failed to pay outstanding invoices in the amount of $8,992.50. In support of this statement, Strib Industries attached copies of nine overdue invoices that were deemed by the trial court to be written admissions. Construing this evidence in a light most favorable to Northern Chemical, no genuine issues of material fact remain as to Strib Industries' counterclaims for unpaid invoices.

{¶76} In its brief in opposition and on appeal, Northern Chemical does not dispute that it failed to satisfy the unpaid invoices for services rendered by Strib Industries. Instead, Northern Chemical argues that it is excused from performing its obligation to pay the outstanding invoices because Strib Industries' "materially breached" the parties' agreement for Strib Industries to receive payment after Northern Chemical was paid by ChemMasters. However, Northern Chemical's opposition brief failed to set forth admissible evidence to support its allegation of

material breach.  Accordingly, the trial court properly granted summary judgment in favor of Strib Industries for its claim for unpaid invoices in the amount of $8,992.50.

**{¶77}** Based on the foregoing, Northern Chemical's second assignment of error is overruled.

**{¶78}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
LARRY A. JONES, SR., J., CONCUR